[Civ. No. 8710.   Third Dist.   June 8, 1956.]

PAUL W. FRY et al., Respondents, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Pardee & Cady, Samuel B. Stewart, Christopher M. Jenks and Theodore Sachsman for Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Respondents.

PEEK, J.—This is an appeal by defendant from a money judgment in an action to recover damages for malicious prosecution and from the orders of the court denying its motion for a new trial and its motion for a judgment notwithstanding the verdict.

█ The plaintiffs, because of Mr. Fry's work as a mechanic on construction jobs, had lived in various parts of the state. Likewise because of the nature of his work they lived in a house trailer. Their permanent address, however, was the residence of their son-in-law at Redding. For several years, wherever they happened to be, they did all of their banking with the defendant. When they moved to Susanville in June of 1950 they followed their custom and opened a commercial account. At that time they either had accounts with or were financing the purchase of motor vehicles through defendant's branches at Paradise, Redding, Cedarville and Ukiah. On the 20th of that month they deposited $150 in their Susanville account by a transfer of their account from the Cedarville branch. During the same month two other deposits were made to their new account; one in the sum of $181.17 and the other in the sum of $100.48. By a mistake in defendant's office, plaintiffs' account was credited with a $1,200 deposit made by another customer. This erroneous credit was reflected in the June statement which was mailed on July 1 and showed their balance to be in the sum of $1,288.04. However, as the statement was mailed to them at "General Delivery, Susanville," it was not received until July 7 or 8. On July 6, prior to the time of receiving the statement, and in accordance with her husband's instructions, Mrs. Fry went to the bank for the purpose of withdrawing all but $100 from the account in order to pay off the balance on a new trailer they were buying in Redding. She was surprised when the teller showed her a ledger sheet which disclosed a balance of $1,288.04 in their account. However, she withdrew the sum of $1,188.04 by means of a check written by the teller and took the money with her to Redding. Because of her concern over what had transpired, she sought to reach her husband at his work, but the road was barricaded and she was unable to see him. She therefore continued on to her daughter's home in Redding. After a discussion with the daughter, it was decided that the money should be placed in their accounts at the defendant's Redding branch, $1,000 being deposited in a savings account and the remainder in a commercial account. On the following day, she returned to Susanville, and that evening, upon his return from work, informed her husband of what had occurred. His hours of work were such that he left home at approximately 6:30 a. m. and returned at approximately 6 p. m. He told her that a mistake had been made; that he believed they had more in

their account than was shown by the statement, in other words more than $88.04; and that she should get their attorney and go to the bank and straighten it out. Although Mr. Fry requested time off during the week, his employer refused, telling him that he should wait until the following Saturday. On the following Tuesday morning, before they could get to the bank, the assistant manager, Mr. McClure, who was in charge of the bank in the absence of the manager, discovered the error. He immediately conferred with the bank's local counsel, who advised him to try and locate Mrs. Fry.

The record shows that a taxi stand was located directly across the street from the bank, but McClure testified that because he lacked transportation he asked the sheriff of Lassen County to drive him and another bank employee the four or five blocks to the trailer court where the Frys were living. Mrs. Fry testified that in reply to McClure's statement that she had taken some money from the bank which did not belong to her and his question as to when she would pay it back, she said that she and her husband had discovered the error; that they would be in the bank with their attorney on the following Saturday, and McClure replied that would be all right; that when she denied ownership of a Buick automobile (actually they owned a Hudson) which was parked nearby and to which McClure had referred, he said, "There is no use of lying, there is an officer reading your license plate," and that she was "not going any place"; that she then handed to him the keys of her car and said that he could take the car and lock it up at the garage, and if there was anything wrong she would pay the storage. Her testimony concerning the occurrence was corroborated by her son who was there at the time. McClure's testimony concerning the same event was that Mrs. Fry acknowledged the mistake; that contrary to her testimony—that she and her husband would be in the bank on Saturday—she told him that her husband was in the Sacramento Valley looking for work, and as soon as he came home they would come in the bank and make settlement; that he made no inquiry as to when her husband would be home; that he inspected the registration certificate on the steering post of the car and noticed that it was being financed by defendant's Alturas branch; and that upon leaving he told her "not to leave town until the matter was cleared up." He also testified that no other attempt was made by anyone connected with the bank to talk to either Mr. or Mrs. Fry prior to her arrest; that he called the Para-

dise branch and determined that the Hudson was being financed through that branch but did not recall the balance which was due on the contract; that he also made calls to the Alturas and Ukiah branches and found out that the accounts there were not sufficient for the bank to exercise its right of offset; and that from the Ukiah branch he learned that the Frys were financing a Ford pickup truck there. Fry, upon learning of the incident at the trailer court, again endeavored to obtain time off to go to the bank, but again was told by his employer to wait until Saturday.

On the following day the bank manager, Mr. Cornelius, returned from his vacation and discussed the problem with McClure and the bank's attorney, Mr. Pardee. McClure testified he told them his version of what Mrs. Fry had said concerning the whereabouts of her husband and that they would call at the bank when he returned; that neither Pardee nor Cornelius asked as to when Mr. Fry would return; that they knew the Hudson was being financed through the Alturas branch and the Ford pickup through the Ukiah branch. On the following day a bank employee informed Cornelius that he had seen Fry the evening before at his trailer. In the meantime Cornelius had also learned the name of Fry's employer and endeavored to reach him by phone. In this he was unsuccessful but he was able to see him the next day. At the request of Cornelius, the employer Malfitano came to the bank in the company of Mr. Baker, his superintendent. Baker testified that Malfitano called him at the job and asked him to come to the bank. This was at about 11 o'clock in the morning. When he arrived Malfitano, who was talking to the bank manager, informed him that there had been some trouble, and because of what had happened he did not want Fry in his employ any longer, and he then gave Baker instructions to fire him. Accordingly Fry was discharged at the end of his shift that same evening.

McClure and Pardee both testified they believed Mrs. Fry's statement that she realized a mistake had been made. Pardee's testimony was that he had no idea of having her arrested and advised McClure to see the Frys and have the mistake corrected. He further testified that "it [was] possible" he gave no thought to the criminal aspect until after he had heard that Fry was to be fired from his job. Cornelius testified that upon learning of Fry's discharge, Pardee stated: "Well, that makes it look a lot different." He immediately went to his office, returning shortly to advise Cornelius that

some action should be taken, and stating that he thought Mrs. Fry should be charged with theft. At the conclusion of his testimony, Pardee said, "The one thing that impelled me to advise the making of the complaint was the fact that I knew that Fry was apt to lose his job, and he was in a very mobile condition."

The record shows that following this discussion Cornelius telephoned the bank's chief counsel in San Francisco concerning the matter and was told by him to do whatever its local attorney advised. Cornelius made no further effort to contact the Frys and that afternoon filed a criminal complaint charging Mrs. Fry with theft of the sum of $1,200. She was arrested and held in the county jail until the following afternoon when she was released on bail. Her arrest and incarceration were reported on the front page of the local newspaper. At the preliminary hearing the complaint was dismissed because of insufficiency of the evidence. Thereafter the money was returned to the bank, and the plaintiffs brought this action for malicious prosecution. The jury, by its verdict, awarded Mrs. Fry $15,000 compensatory damages and $10,000 punitive damages. Mr. Fry was awarded the sum of $300 representing the fee paid by him to the attorney who represented Mrs. Fry in the criminal matter.

The first three contentions of defendant are that the evidence as a matter of law shows conclusively that it acted with probable cause and in good faith; upon the advice of counsel after a full and fair disclosure of all known information; and without malice.

It is true as defendant states, probable cause does not depend upon knowledge of facts which satisfactorily prove guilt (*Centers* v. *Dollar Markets,* 99 Cal.App.2d 534 [222 P.2d 136]) and that a person may act "upon what appears to be true, even if it turns out to be false." (*White* v. *Brinkman,* 23 Cal.App.2d 307, 312 [73 P.2d 254].) But it is also true that the jury was not compelled to adopt McClure's statement, as does defendant in its argument, as to what Mrs. Fry said to him concerning the whereabouts of her husband. It could with equal propriety have found in accordance with her testimony as summarized herein. Again referring to the evidence pertaining to defendant's first contention, it shows testimony by McClure that Mrs. Fry told him her husband was in the Sacramento Valley seeking work, but neither he nor anyone else connected with the bank made any inquiry as to when Mrs. Fry expected him to return; and although

the manager learned on June 14 that Mr. Fry could not have been in the Sacramento Valley as McClure had testified, but had been working in Susanville, he did not see fit to question the accuracy of McClure's account of his conversation with Mrs. Fry. The record further shows that the manager made no effort either to see or otherwise communicate with Mr. or Mrs. Fry although they were known to be living at a trailer court only four or five blocks from the bank. However, he did talk to Fry's employer, and the jury could well have inferred that Fry's discharge was the result of their conversation. Additionally there was the further testimony by McClure that when he talked with Mrs. Fry they both recognized that a mistake had been made; that he believed her to be truthful and that he so informed Pardee and Cornelius. Lastly there was the testimony of Pardee who stated that in the first instance he had no thought that a crime had been committed; but according to Cornelius, when Pardee learned that Fry was to be fired, he stated, "Well, that makes it look a lot different," and advised Cornelius he should "take some action to protect the bank's interest" which action he thought should be to "charge her with theft," and as previously noted, Pardee concluded his cross-examination with the statement that the one thing that "impelled" him to advise bringing the criminal action was his knowledge that Fry was to be fired and what he termed the Frys' "very mobile condition."

Defendant's argument in support of its contention that the record fails to show any element of malice is also predicated upon the assumption that Cornelius disclosed all facts as he knew them to counsel and only acted upon the advice of counsel; hence there was a complete defense to this charge on the part of plaintiffs. The jury could also have found that Cornelius did not act in good faith in instituting criminal proceedings when he did since, by reason of what Mrs. Fry had stated she said to McClure, Cornelius knew that she intended to come into the bank and rectify the mistake which the bank had made. McClure had told him that he believed Mrs. Fry. The attorney had said that at the outset he did not believe a crime had been committed, and Cornelius made no effort either to see or otherwise communicate with Mr. or Mrs. Fry who he knew were living a short distance from the bank. However, he did contact Fry's employer and Fry was discharged that same day. Additionally the jury could consider the testimony of Mrs. Fry, which was corroborated

by her son, that during the course of her arrest the sheriff's radio carried an announcement to the arresting officers instructing them to tell her that if she would come in on Saturday as she promised, they could tear up the warrant and let her go. Defendant made no attempt either to explain or discredit this testimony, either by interrogation of the arresting officers, the sheriff and a matron, or by other evidence.

While there is no legal presumption of malice, nevertheless it may be inferred from want of probable cause.

It may be shown by proof of lack of good faith on the part of the accuser, and if a defendant does not himself believe in the guilt of the accused, then the circumstances relied on will not shield him. He must believe that his charge is true. (*Centers* v. *Dollar Markets*, 99 Cal.App.2d 534, 538-543 [222 P.2d 136].) Applying the rule above set forth, it cannot be said that under the facts and circumstances heretofore summarized there was not sufficient evidence to support the implied finding of the jury as to malice.

Defendant argues in support of its next contention that since McClure and Cornelius stated they made a full and fair disclosure to their attorney, Pardee, and since Cornelius only acted upon Pardee's advice, a complete defense was made to the action. Here again defendant fails to consider the evidence adduced by plaintiffs directly in conflict thereto. Such evidence if believed, and it apparently was, was amply sufficient to sustain the jury's implied finding in this regard; that is, if Mrs. Fry's version of what transpired was accepted, the jury could properly have found that there had not been a full disclosure by McClure and Cornelius to defendant's counsel since he was not apprised of Mrs. Fry's statement that she and her husband would come to the bank on Saturday and correct the mistake, the knowledge of which was chargeable to Cornelius, the manager, if as she stated she had so advised McClure. Necessarily then, under such circumstances, reliance upon the advice of counsel would not be available. (*Hudson* v. *Zumwalt*, 64 Cal.App.2d 866 [149 P.2d 457].)

Defendant's next contention, that the sums awarded for compensatory as well as punitive damages were excessive, is likewise without merit. The rule is too well established to warrant citation of authority that when the jury has resolved the conflicting evidence, and the inferences to be drawn therefrom, in favor of the prevailing party, its conclusion in the absence of a showing that it was the result

of passion or prejudice is conclusive on appeal. (*Sandoval* v. *Southern Calif. Enterprises, Inc.*, 98 Cal.App.2d 240, 256-257 [219 P.2d 928].) ■ The question on appeal is not the amount of damages as such that the appellate court itself would have awarded, but whether or not the court believes that the damages are so excessive as to show passion or prejudice on the part of the jury. (15 Cal.Jur.2d 42, § 229.) ■ The conclusion of this court in this regard receives added strength from the fact that a like contention was made by defendant on its motion for a new trial, but the trial court denied the same and refused to disturb the award. (*Fall* v. *Coastwise Line*, 116 Cal.App.2d 345, 357 [254 P.2d 58].) ■ Under such circumstances it is neither within the province of this court to reassess the amount of general damages nor the amount of punitive damages suffered by Mrs. Fry from the humiliation of being arrested and spending a night in jail, all of which was reported on the front page of the local newspaper. It was for the jury to determine the amount of mortification and injury to her character caused by such imprisonment and adverse publicity, and as noted above, in the absence of a showing that such determination was the result of passion or prejudice, this court may not interfere with that determination. (98 Cal.App.2d 240, 256-257.)

■ Defendant's final contentions relate to certain instructions given by the trial court. From our examination of the instructions so attacked, it would appear unnecessary to discuss each with particularity. Since we must consider the instructions so given as a whole, rather than with reference to isolated words and phrases as used in some particular instruction singled out by the defendant, it is readily apparent that no reversible error was committed by the trial court. It is sufficient to note that all of the instructions requested by defendant on probable cause (concerning which the evidence was obviously conflicting), as well as the other essential elements of a case founded on malicious prosecution were given; that is, the instructions so given embraced proper definitions and explanations of all of the elements of malicious prosecution which were to be applied by the jury to the facts posed by the evidence. When so viewed in the light of the rule as enunciated, it cannot be said that the jury was not fully and fairly instructed on all elements of the case. (*Bernstein* v. *Maimes*, 126 Cal.App.2d 468 [272 P.2d 529].)

The purported appeal from the order denying defendant's motion for a new trial, not being an appealable order, is

dismissed. The order denying defendant's motion for a judgment notwithstanding the verdict, and the judgment, are affirmed.

Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 1, 1956.