[Civ. No. 19626. First Dist., Div. Two. Apr. 12, 1962.]

MELVIN NORTHRUP, Plaintiff and Respondent, v. DEWEY BAKER et al., Defendants and Appellants.

Joseph A. Jackson for Defendants and Appellants.

Delany & Freitas and James A. Himmel for Plaintiff and Respondent.

KAUFMAN, P. J.—Plaintiff, Melvin Northrup, sued for damages on a complaint containing two counts, the first for assault and battery, the second for malicious prosecution. The litigation grew out of an altercation which took place in the plaintiff's garage between the plaintiff and his nephew, the defendant, Merle James Kurtzhal, and the tenant of the garage, the defendant, Dewey Baker, over the collection of the March 1956 rental. The malicious prosecution count was based on a criminal complaint sworn to by Baker charging that plaintiff had committed assault and battery on him at the time of the rental collection incident. Plaintiff was acquitted by a jury in the criminal action. The jury, before which the within action was tried, rendered separate verdicts in the plaintiff's favor and against both defendants. Each defendant filed a motion for a new trial. The trial court ordered that a new trial would be granted on the ground of insufficiency of the evidence unless the plaintiff filed a written remission of $2,000 on the whole judgment against Baker and $6,000 on the whole judgment against Kurtzhal. Plaintiff made such remissions. Both motions for new trial were denied, and plaintiff was awarded $100 general damages, $100 punitive damages against each of the defendants on the assault and battery count. On the malicious prosecution count, plaintiff was awarded $3,000 general damages, $500 exemplary damages against Baker, and $3,000 general damages and $1,500 exemplary damages as against Kurtzhal.

On this appeal from the judgment, both defendants contend that the trial court erred in: (1) refusing to grant their motions for a nonsuit as the evidence was insufficient on both counts; (2) denying their motion for a new trial; (3) in permitting certain prejudicial misconduct of the plaintiff's attorney; and (4) its instructions to the jury, as well as in the admission of certain evidence. There is no merit in any of these contentions.

The circumstances leading up to the altercation of March 23, 1956, were as follows: Respondent Northrup and his wife, Winnie, acquired as community property during their marriage, a building at 1335 Fulton Street, San Francisco, used as a business garage, a few doors away from the San Francisco Pet Hospital at 1371 Fulton Street, San Francisco, which they owned and operated since 1934. Mrs. Northrup was employed in the pet hospital to take care of the books and financial records from 1934 until 1955. She was also in charge of the garage rentals. Respondent's nephew, the appellant

Kurtzhal, was also employed at the hospital from about 1946 or 1947 until July, 1955. In February 1955, respondent's wife commenced an action for divorce. Some time before the divorce action, Mrs. Northrup was living in the same house as appellant Kurtzhal, and also had joint bank accounts with him. An interlocutory decree entered on August 30, 1956 (nunc pro tunc, February 29, 1956) awarded the garage to Mrs. Northrup but gave the respondent an option to purchase at an agreed price of $20,000 cash, payable on or before April 1, 1956.

Some time in 1954, appellant Kurtzhal recommended his good friend, the appellant Baker, to Mrs. Northrup as a tenant for the garage. Respondent at this time was in Japan. Baker signed the lease with only Kurtzhal and Mrs. Northrup present. At the time of the lease, there was an oral agreement that Kurtzhal would be provided with a free stall in the garage. Kurtzhal usually collected the rent check from Baker for Mrs. Northrup. After Baker became the tenant of the garage, Kurtzhal received a key. In January of 1956, Baker borrowed about $500 from Kurtzhal. After Kurtzhal ceased his duties at the San Francisco Pet Hospital, he was employed by Baker to run errands and deliver automobiles.

In November 1955, respondent told Baker that Kurtzhal no longer represented him, and that he personally would be collecting the rents for the garage. Baker showed him some receipts signed by Mrs. Northrup indicating that the rent for November and December of 1955, and January of 1956, had been paid. Respondent then indicated he would appear in February to collect the rental for that month. When Northrup returned early in February, he was not given his check on the first visit but received it on the second visit. Early in March, the respondent saw Baker in the garage office and said he would like to have the March rent. Baker indicated he would have the rent in a few days when certain automobiles he was working on would be paid for, and promised the respondent the rent in time for the latter's Friday bank deposit. On March 23, respondent had still not received the $200 monthly rental for the garage from Baker. Respondent then sent an employee to the garage to get the check. The employee returned without the check.

Immediately thereafter, at about 11 in the morning, respondent left the pet hospital and went to Baker's office in the garage and asked for the check. Baker was sitting at his desk and after the respondent had indicated the purpose of

his visit said: "That is what I was waiting for" and pulled out a piece of paper and showed the respondent a receipt for the March rental dated March 2 and signed by Mrs. Northrup. Respondent replied: "Dewey, that is no way to treat a neighbor. That is a lousy, cowardly thing to do. If you had let me know, I would have made other plans." Baker replied: "I'm from the South. Nobody can talk to me like that" and swung at the respondent. Respondent, who was an amateur wrestling champion, grabbed Baker around the waist and held him down. Both fell to the floor, with Baker on the bottom, holding respondent's ears in both hands. Shortly thereafter, several people, subsequently identified as Baker's brother, Ray Baker, and brother-in-law, Delbert Leifur, entered the office and separated the participants. Kurtzhal also entered, stepped in front of both men and grabbed the respondent. Appellant Baker grabbed a chair and struck at the respondent and also threatened him with a huge object wrapped in paper or canvas and told the respondent: "This weighs about six pounds. You try to get out of here, and I will kill you." Respondent indicated that he could not get out as he was being restrained by the other two men. Baker then put down the canvas wrapped object and called the police.

In addition to those mentioned above, the incident was witnessed by Mrs. Snyder and Mrs. Whittington, two patrons of the San Francisco Pet Hospital, who were walking by the garage and observed the goings on through the big glass wall. Both of these witnesses testified that they heard a heated discussion and then saw appellant Baker strike the respondent with a chair and subsequently heard a thud on the floor and saw the two appellants beating on the respondent. Both of the appellants testified and denied attacking the respondent but indicated that the respondent had started the attack, and accused him of using abusive language, etc.

The police arrived about 20 minutes after being called by Baker, who, in the presence of the respondent, told the police that the respondent had assaulted him and showed the police a letter he had received from the respondent. Respondent remained silent and did not deny the accusation. Appellant Baker sought advice from Mrs. Northrup's attorney, and on that advice, went to the district attorney's office accompanied by Kurtzhal. About one week later, respondent was arrested, booked and placed in a cell for about three quarters of an hour. He was acquitted of the criminal charge after a trial of three or four days. Appellant Kurtzhal appeared at the

criminal trial pursuant to a subpoena but was never called as a witness and never testified.

The first argument on appeal is that the trial court erred in denying the appellants' motion for a nonsuit as there was not sufficient evidence to go to a jury on either cause of action.

As to the first cause of action for assault and battery, there is no question that the testimony given by the respondent as to the circumstances under which the alleged assault occurred, although contradicted by the other participants in the quarrel, is legally sufficient to sustain the jury's conclusion and that the respondent was entitled to reasonable damages under the count charging assault and battery. As is usual in this kind of a case, there is some very conflicting evidence as to the exact occurrence of the altercation and in the state of the record, it cannot be maintained that the amount of damages awarded under the first count was improper, especially since, under the pleadings, the jury was entitled to allow both general and exemplary damages. The other points raised on appeal relating to the first cause of action are without merit.

We turn now to the appellants' major contention which is that the trial court erroneously denied their motion for a nonsuit on the alleged insufficiency of the evidence on the malicious prosecution count. The elements of a cause of action for malicious prosecution are: ▮▮▮ (1) termination of the criminal proceedings in the respondent's favor; (2) want of probable cause; and (3) malice on the part of the appellants (*Oppenheimer* v. *Tamblyn*, 167 Cal.App.2d 158 [334 P.2d 152]; *Jaffe* v. *Stone*, 18 Cal.2d 146 [114 P.2d 335, 135 A.L.R. 775]). As the first element is not in dispute, the question is only whether, considering only the evidence most favorable to the respondent, together with every inference which reasonably can be drawn and every presumption which fairly can be deemed to arise therefrom in his favor, there is any want of probable cause and of malice. Appellants particularly attack the insufficiency of the evidence indicating any concerted action between them in the attack on the respondent and the admission of certain evidence which bore on the relationship between Mrs. Northrup and Kurtzhal. ▮▮▮ As for the matter of the conspiracy between the appellants, it is well settled that the existence of a conspiracy, like other facts, may be proved by circumstances as well as direct evidence. Generally, it can be established only by such circumstantial evidence, for it is next to impossible to secure direct evidence

of a conspiracy unless one of the participants has confessed. Evidence of the conspiracy may be inferred from all the circumstances, such as the nature of the acts done, the interests of the alleged conspirators, and the relation of the parties (*Campbell* v. *Birch,* 19 Cal.2d 778 [122 P.2d 902] at 789).

All who take part or assist in the commission of a false imprisonment are joint tortfeasors and may be joined as defendants without allegation or proof of conspiracy (*Kaufman* v. *Brown,* 93 Cal.App.2d 508 [209 P.2d 156]).

Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. The burden of proof was on the respondent to prove that the appellants did not have reasonable grounds for believing that the facts alleged in the complaint were true in order to recover compensatory damages. Probable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused person. It has reference to the common standard of human judgment and conduct. It exists if one is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true (*Rummler* v. *Ackerknecht,* 136 Cal.App.2d 511 [288 P.2d 919]). Proof of the favorable termination of the criminal proceedings does not create a conflict on the issue of probable cause. Proof that no crime was committed or that the accused is innocent does not negative the existence of probable cause (*Verdier* v. *Verdier,* 152 Cal.App.2d 348 [313 P.2d 123]).

When the evidence bearing on the question of probable cause is in conflict, it is the province of the jury to determine whether facts exist which will warrant or reject an inference of probable cause. However, if there is no dispute concerning the existence of the facts relied on to show want of probable cause, the trial judge must then determine, as a matter of law, whether such undisputed facts do or do not warrant an inference of want of probable cause (*Bernstein* v. *Maimes,* 126 Cal.App.2d 468 [272 P.2d 529]; *Centers* v. *Dollar Markets,* 99 Cal.App.2d 534, 541 [222 P.2d 136]). In this case, the trial court properly concluded that the evidence bearing on the question of probable cause was in conflict and properly instructed the jury.

The question of malice also presents an issue of fact to be determined in the trial court. The malice required in an action for malicious prosecution is not limited to actual hostility or ill will, but exists when the proceedings

are instituted primarily for an improper purpose (*Albertson v. Raboff*, 185 Cal.App.2d 372 [8 Cal.Rptr. 398] ; *Albertson v. Raboff*, 46 Cal.2d 375 [295 P.2d 405]). Malice must be proven against a particular defendant in order to justify an award of compensatory damages against the defendant but like any other fact in issue, malice may be proved by direct evidence or may be inferred from all of the circumstances in the case (*Centers v. Dollar Markets, supra*). It may, but need not necessarily, be inferred from want of probable cause but want of probable cause may not be inferred from the most express malice (*Grove v. Purity Stores, Ltd.*, 153 Cal.App.2d 234 [314 P.2d 543] ; *Singleton v. Singleton*, 68 Cal.App.2d 681 [157 P.2d 886]).

In view of the lengthy record and the circumstances, we do not deem it necessary to discuss in great detail all of the evidence adduced. We think all of the evidence complained of was relevant on the question of malice.

Appellants' argument in support of their contention that the record fails to show any element of malice is also predicated on the assumption that they disclosed all the facts as they knew them to counsel and only acted upon the advice of counsel, hence, there was a complete defense to the charge on their part. The rule is that if there were any circumstances within the knowledge of the prosecuting witness which would destroy the apparent effect of facts stated by him to an attorney, then the defense that probable cause is based on advice of counsel fails (*Warner v. O'Connor*, 199 Cal.App.2d 770 [18 Cal.Rptr. 902] ; *Fry v. Bank of America*, 142 Cal.App.2d 150 [298 P.2d 34] ; *Hudson v. Zumwalt*, 64 Cal.App.2d 866 [149 P.2d 457]). In the instant case, Baker admitted "stalling" on the March rent; neither the deputy district attorney nor the other counsel[1] consulted was called to testify. From these facts and all the remaining evidence presented, the jury could reasonably conclude that all of the relevant facts had not been disclosed in good faith (*Albertson v. Raboff*, 185 Cal.App.2d 372, 387 [8 Cal.Rptr. 398]). On appeal, the findings of the trier of fact as to such matters will not be disturbed unless it can be held that they are not supported by substantial evidence in the record (*Singleton v. Singleton*, 68 Cal.App.2d 681, 691 [157 P.2d 886]).

Applying the rules set forth above to the facts and circum-

---

[1]Who was present in court.

stances heretofore summarized, we can only conclude that there was ample substantial evidence to support the implied findings of the jury as to probable cause and malice. ■ " 'It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. ■ When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' " (*Hartzell* v. *Myall*, 115 Cal.App.2d 670, 673 [252 P.2d 676].)

Appellants' next contention is that the trial court erred in denying their motion for a new trial because the sums awarded for punitive damages were excessive, is likewise without merit. ■ The rule is too well established to warrant citation of authority that when the jury has resolved the conflicting evidence and the inferences to be drawn therefrom in favor of the prevailing party, its conclusion in the absence of a showing that it was the result of passion or prejudice is conclusive on appeal. ■ The question on appeal is not the amount of damages as such that the appellate court itself would have awarded but whether or not the court believes that the damages are so excessive as to show passion or prejudice on the part of the jury. The conclusion of this court in this regard receives added strength from the fact that a like contention was made by the appellants on their motion for a new trial and the trial court exercised its discretion to lower the amount of the awards and deny their motions (*Lerner* v. *Glickfeld*, 187 Cal.App.2d 514 at 525-527 [9 Cal. Rptr. 686]).

The next argument is that the court erroneously admitted character evidence. Ordinarily, the character of a litigant in civil cases is not admissible in evidence but when the character of such party becomes involved, then the right to produce evidence becomes his right (Code Civ. Proc., § 2053). ■ In the instant case, the record indicates that appellant, Dewey Baker, through his counsel, first raised the question of good character by asking a question which related to respondent's savagery and ferocity as a wrestler. The trial court gave serious consideration to appellants' motion to strike the character evidence, then properly denied their motion.

The record does not support the appellants' alleged assignments of error relating to prejudicial misconduct on the part of respondent's attorney. The next contention, that the trial court erroneously refused to give appellant Baker's proffered instruction No. 17 which inferred that the respondent was a trespasser who could be removed from the premises by force, is equally without merit. As pointed out above, the interlocutory decree which distributed the garage to Mrs. Northrup was not entered until several months after the altercation here in issue. During the pendency of the divorce action, respondent was entitled to collect the rent (Civ. Code, § 161a; *Vai* v. *Bank of America*, 56 Cal.2d 329, 337 [15 Cal. Rptr. 71, 364 P.2d 247]).

Appellants' remaining contentions relate to certain other instructions refused or given by the trial court. From our examination of the instructions so attacked, it would appear unnecessary to discuss each in detail. Since we must consider the instructions so given as a whole, rather than with reference to isolated words and phrases as used in a certain particular instruction, it is readily apparent that no reversible error was committed by the trial court. When viewed as a whole, we cannot say that the jury was not fully and fairly instructed on all of the elements of the case (*Fry* v. *Bank of America*, 142 Cal.App.2d 150 [298 P.2d 34]).

No prejudicial error appearing in the record before us, the judgment must be and is hereby affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 4, 1962.