Filed 3/2/15  McNeley v. Steve's Charburgers CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DILLARD JAMES MCNELEY, | B252327 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC461022) |
| v. | |
| STEVE'S CHARBURGERS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Plaintiff and Appellant Dillard James McNeley, in pro. per.

Horvitz & Levy, Curt Cutting and Katherine Perkins Ross; Law Office of Craig A. Holtz and Syndee R. Singer; Wisotsky, Procter & Shyer and Lisa N. Shyer for Defendants and Respondents.

———————————————

# INTRODUCTION

Plaintiff Dillard James McNeley appeals a judgment of nonsuit on his cause of action for malicious prosecution. McNeley concedes that many of the facts relevant to his malicious prosecution claim are undisputed—namely, that his companion, Latasha Cole, took money from a cash register at defendant Steve's Charburgers (Steve's) over the objections of Steve's employees, and that McNeley and Cole left together (with the money) in McNeley's vehicle. McNeley contends, however, that a nonsuit should not have been granted because there was conflicting evidence as to whether he threatened violence during the course of the incident. As to that issue, several Steve's employees testified that he threatened them; he denied it.

We affirm. Probable cause to initiate a criminal prosecution exists where "it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." (*Ecker v. Raging Waters Group, Inc*. (2001) 87 Cal.App.4th 1320, 1330.) In the present case, presuming—as we must for purposes of a nonsuit—that McNeley did not threaten the employees with violence, on the facts of this case it still was reasonable for the employees to suspect that McNeley and Cole had committed a crime and to report that suspected crime to law enforcement. Accordingly, McNeley could not establish the absence of probable cause, and thus the trial court properly granted a nonsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The June 18, 2010 Incident

On June 18, 2010, McNeley and his companion, Cole, visited Steve's. Four employees were on duty: Brandi Hernandez and Guillermina Cruz, who were taking orders and serving food, and Juan Quintanilla and Saturino (Tim) Rodriguez-Ortega, who were cooking and preparing food.

McNeley and Cole each ordered a salad, for which McNeley paid about $23. McNeley and Cole claimed to have found eggshells in their salads and demanded a refund. Hernandez offered to make McNeley and Cole fresh salads, but said she could not give them a refund without permission from her manager. Hernandez spoke with

2

manager Vlasis Andrianopoulis on the telephone; she testified that Andrianopoulis did not authorize a refund.

It is undisputed that while Hernandez was on the phone with Andrianopoulis, Cole walked behind the counter and took $23 from the cash register. Rodriguez-Ortega tried to stop her by putting his hand over the register. At some point, McNeley flipped up the food counter and exchanged words with Quintanilla. Cole then grabbed McNeley's hand and the two exited the restaurant together.[1]

Hernandez called the police, telling the 911 operator that a woman had complained about her salad and taken money from the register. The Torrance Police Department called back a few minutes later and spoke to Cruz. Before the police arrived, McNeley and Cole got into McNeley's van and drove away.

The parties gave conflicting accounts of McNeley's alleged threats of violence. Those conflicting accounts are as follows:

*The gun allegation*: Hernandez said that while McNeley was still inside the restaurant, he threatened to get a gun. She reported the threat to the police. Neither Cruz nor Quintanilla heard McNeley threaten to get a gun, and McNeley denied the allegation. At the time of the incident, McNeley had a BB gun resembling a real gun in his vehicle.

*The coffee pot allegation*: Cruz said that during the incident, she saw McNeley pick up a coffee pot in a threatening way. Officer Eric Williams testified that Cruz told him that McNeley had threatened to throw hot water from the coffee pot on employees if they got involved, but he did not recall Cruz saying that McNeley picked up a coffee pot. McNeley denied picking up the coffee pot or threatening anyone with it. The

---

[1] The incident inside the restaurant was captured on a video surveillance camera, which showed images, but had no sound. Portions of the surveillance video were played at trial and are part of our appellate record.

surveillance video showed a coffee pot near the counter area where McNeley and Cole were standing, but it did not show McNeley pick up the coffee pot at any point.[2]

*The knife allegation*: Cruz and Quintanilla said McNeley pulled out a small knife as he retreated to the parking lot. Both Cruz and Quintanilla reported the knife to the police. McNeley denied wielding a knife, but admitted that he possessed a knife that he used as a box cutter. After McNeley's arrest, police recovered a folding knife from McNeley's vehicle, which Quintanilla identified as the one he saw.

Police arrested McNeley a few blocks from Steve's shortly after the incident. Officer Williams said he made the decision to arrest McNeley for robbery after reviewing the videotape and taking witness statements. He was aware when he made the decision to arrest McNeley that the surveillance video of the incident did not show McNeley picking up a coffee pot. Each employee said he or she had not asked law enforcement to arrest or prosecute McNeley.

## II. The Criminal Action

### A. *Preliminary Hearing*

On July 6, 2010, an amended felony complaint was filed charging McNeley with second degree robbery in violation of Penal Code section 211. It was further alleged that McNeley used a knife in the commission of the crime. At the preliminary hearing, Quintanilla testified that on June 18, he saw Cole go behind the counter and take something from the register. McNeley was angry and insulting, and when Quintanilla told him to calm down, McNeley responded, "What's your problem, motherfucker?" Quintanilla said, "If you want to take care of this, let's go outside." Quintanilla walked outside, and McNeley took out a knife from his pocket. The knife was four to five inches long. Quintanilla went back inside the restaurant.[3]

---

[2]    Cruz conceded that the videotape did not show McNeley picking up a coffee pot, and she said she was confused "[b]ecause it's in my head. I remember him lifting it up. And now I haven't seen that in the video."

[3]    Rodriguez-Ortega testified briefly on July 6, 2010, but because he did not return the following day to complete his testimony, his testimony was stricken.

4

Officer Eric Williams also testified at the preliminary hearing. He said that he interviewed Cruz on June 18 following the incident. Cruz said she saw Cole remove money from the register and heard McNeley say that if anyone got involved, he would take a coffee pot and throw it at people. Cruz then followed McNeley and Cole out of the restaurant and saw McNeley pull out a small knife and threaten another employee with it. Cruz told Officer Williams that Cole took $23 from the register, which was the amount Cole and McNeley paid for their food.

Officer Williams subsequently viewed surveillance footage provided by Steve's. It showed Cole walk behind the counter and open the register. An employee appeared to try to stop her. Williams also saw McNeley flip open a divider separating the employee area from the rest of the restaurant while Cole was behind the counter. Williams did not see McNeley pick up a coffee pot or threaten anyone with a weapon.

Following argument by counsel, the court said that the alleged knife incident was not relevant to the robbery, and it subsequently struck the knife allegation from the complaint. As to the remainder of count 1, "it appearing from the evidence presented to the court that a robbery took place and that the [defendant] from the evidence appear[s] to be guilty thereof," the court held McNeley to answer.

### B. Dismissal

On September 20, 2010, the prosecutor moved to dismiss the criminal case pursuant to Penal Code section 1385—"[i]n the interests of justice due to the insufficiency of the evidence." The court granted the motion and ordered McNeley released from custody.

## III. The Malicious Prosecution Action

In May 2011, McNeley filed this civil suit alleging a variety of torts against Steve's, Andrianopoulis, Quintanilla, Cruz, Rodriquez-Ortega, and Hernandez. McNeley filed the operative third amended complaint on February 4, 2013, and in June 2013, the case went to trial on five causes of action: negligence (against all defendants); negligent hiring (against Steve's); malicious prosecution (against employee defendants); intentional

5

infliction of emotional distress (against employee defendants); and assault (against Quintanilla).

After both sides rested, defendants moved for a nonsuit on the assault, intentional infliction of emotional distress, and malicious prosecution claims. As to malicious prosecution, defendants argued that the relevant facts were undisputed: "Cole went behind the cash register and took money without permission, prompting the employees – first, Brandi Hernandez – and then the police called back and talked to Guillermina Cruz. [¶] They reported what happened. The police came. They told the police what happened. They didn't request that the police arrest Mr. McNeley. They had no input into that decision whatsoever. [¶] They certainly didn't say, 'We want him arrested for robbery or theft,' . . . . They didn't ask [for] him to be prosecuted. They acted like a reasonable person [*sic*] under the circumstances. They had probable cause to call the police. [¶] Also in this matter, in the criminal matter, there was a preliminary hearing conducted where a judge looked at the evidence, and made a finding whether there was probable cause to hold Mr. McNeley over for trial. The judge did that. The judge did dismiss the knife allegation, but found there was sufficient evidence to bind the plaintiff over for trial on the robbery cause of action, or the robbery count, and looked at the evidence that was presented and made that finding here. [¶] So on both of these elements, the facts are undisputed. It's for the court to make that decision and there's no reason, at this time, not to make that decision. There's no factual finding the jury needs to make. It's undisputed that they acted with probable cause."

McNeley's counsel disagreed, urging that because there were disputed facts as to whether McNeley threatened or employed violence, the trial court could not grant a nonsuit. Counsel said: "[T]he allegations they [defendants] made is what caused the robbery [complaint] to be filed. . . . When you make an allegation that he used a knife or a gun or threatened somebody with a coffee pot, and then that brings the element of fear, that's one of the elements of robbery. . . . [¶] . . . [¶] So they set the chain in motion."

The trial court granted a nonsuit as to all three causes of action. With regard to malicious prosecution, the court explained that even if the allegations of violence were

6

untrue, the employees still had probable cause to report a crime to the police because "[t]hat still leaves us with Ms. Cole taking the money out of the register, without any evidence of permission, struggling with the employee at the cash register, and she's walking out with Mr. McNeley and they both leave together." The court continued: "The court finds based upon the . . . incontrovertible evidence of the People in court, that there was probable cause for the defendants to call the police and to make a report. There's no evidence before the court that had the police been told one less or two less or three less disputed facts that they would have not made an arrest. [¶] Thus there's a failure of proof with respect to the lack of probable cause and the court does not – does not get to the issue of the favorable termination based upon its finding of lack of evidence of a lack of probable cause."[4]

The court served notice of judgment on special verdict on August 9, 2013. McNeley served and filed motions for new trial and for judgment notwithstanding the verdict on August 23, 2013; both were denied by operation of law. McNeley appealed.

---

[4]    The remaining causes of action went to the jury, which returned special verdicts for the defendants. The jury made the following special findings:

"Question Number 1:  Was Brandi Hernandez negligent . . . with respect to placing eggshells in the plaintiff's salad?  Answer, No.

". . . Question Number 3:  Was Guillermina Cruz negligent with respect to placing eggshells in the plaintiff's salad?  Answer, No.

"Question Number 5:  Was Saturino Ortega negligent with respect to placing eggshells in the plaintiff's salad?  Answer, No.

"Question Number 7:  Was Juan Quintanilla negligent with respect to placing eggshells in the plaintiff's salad?  Answer, No.

"Question Number 9:  Was Steve's Charburgers negligent in the hiring, supervising, or retention of Brandi Hernandez, Guillermina Cruz, Saturino Ortega-Rodriguez, and/or Juan Quintanilla?  Answer, No.

"Question Number 11:  Did Juan Quintanilla call Dillard James McNeley a 'fucking nigger?'  Answer, No."

7

**DISCUSSION**

McNeley's sole claim of error on appeal concerns the trial court's grant of nonsuit on the cause of action for malicious prosecution. McNeley contends that because the evidence bearing on his alleged threats of violence was in conflict and a jury reasonably could have concluded that defendants had not been truthful in their reports to police, the issue of probable cause should have gone to the jury.

As we now explain, the trial court properly granted a nonsuit on the malicious prosecution cause of action. Even assuming as we must for purposes of a nonsuit that McNeley did not threaten violence, on the undisputed facts of this case it was objectively reasonable for the defendants to believe that McNeley had committed a crime and to report the suspected crime to law enforcement. As a matter of law, McNeley therefore could not establish lack of probable cause, a necessary element of a prima facie case of malicious prosecution.

## I.     Standard of Review

" 'A motion for nonsuit allows a defendant to test the sufficiency of the plaintiff's evidence before presenting his or her case. . . . 'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.]' (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.)" (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.)

"In reviewing a grant of nonsuit, the appellate court evaluates the evidence in the light most favorable to the plaintiff. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) The judgment of nonsuit will be affirmed if a judgment for the defendant is required as a matter of law, after resolving all presumptions, inferences and doubts in favor of the plaintiff. (*Ibid.*) The review of a grant of nonsuit is de novo. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541-1542.)" (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 669.)

## II. The Trial Court Properly Granted a Nonsuit on McNeley's Malicious Prosecution Claim

### A. Elements of Malicious Prosecution

To establish a cause of action for malicious prosecution of a criminal or civil proceeding, a plaintiff must demonstrate " 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 (*Sheldon Appel*); *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1481.)

Probable cause to initiate a criminal prosecution exists where "it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." (*Ecker v. Raging Waters Group, Inc*., *supra*, 87 Cal.App.4th at p. 1330.) " '[P]robable cause does not depend upon the possession of facts which satisfactorily prove the guilt of an accused person. It has reference of the common standard of human judgment and conduct. It exists if one is possessed of information or facts which are sufficient to cause a reasonable person to honestly believe the charge is true [citation].' (*Northrup v. Baker* (1962) 202 Cal.App.2d 347, 354.)" (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 465.)

The existence or absence of probable cause is a question of law to be determined by the court from the facts established in the case, although evidentiary disputes and factual questions may require resolution before the trial court applies the objective standard to the issue of probable cause. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 875; *Silas v. Arden* (2012) 213 Cal.App.4th 75, 90; *Samgster v. Paetkau* (1998) 68 Cal.App.4th 151, 165.) " 'Where there is no evidence of want of probable cause, or where, upon the undisputed facts and the view of the disputed facts most favorable to the plaintiff, the court can say as a matter of law that there was probable cause, the court should not submit any question to the jury, but should grant a nonsuit or direct a verdict for the defendant.' (16 Cal. Jur. 753.) A nonsuit is proper also when[,] viewing the evidence of the plaintiff in its most favorable aspect for him[,] the court is of the opinion that the

9

evidence will not support a verdict in his favor." (*Pacific Nat. Co. v. Southwest Fin. Co.* (1935) 4 Cal.App.2d 326, 330.)[5]

>    B.    *If Undisputed Facts Establish Probable Cause to Suspect a Crime, a Dispute as to the Truth of Other, Nonessential Facts Does Not Require a Malicious Prosecution Claim to Go to a Jury*

McNeley contends that the trial court could not properly grant a nonsuit because there was a factual dispute about the truthfulness of the employees' reports that he threatened them with violence. He urges that his testimony constituted substantial evidence that the employees fabricated reports that he threatened violence, and thus the trial court was required to allow the issue of probable cause to go to a jury.

There can be no question that the facts surrounding McNeley's alleged threats of violence were disputed: Each of the three employees who testified at trial said McNeley threatened them with violence, while McNeley testified that he never threatened violence of any kind. The relevant case law does not suggest that *every* dispute surrounding an incident giving rise to a cause of action for malicious prosecution requires a jury determination, however. Instead, a jury is required only "[w]hen there is a dispute as to the state of the defendant's knowledge *and the existence of probable cause turns on resolution of that dispute*." (*Sheldon Appel*, *supra*, 47 Cal.3d 863 at p. 881, italics

---

[5]    "Although the malicious prosecution tort has ancient roots, courts have long recognized that the tort has the potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court, and, as a consequence, the tort has traditionally been regarded as a disfavored cause of action. (See, e.g., *Babb v. Superior Court* (1971) 3 Cal.3d 841, 847; cf. *Jaffe v. Stone* (1941) 18 Cal.2d 146, 159-160.) [Footnote omitted.] In a number of other states, the disfavored status of the tort is reflected in a requirement that a plaintiff demonstrate some 'special injury' beyond that ordinarily incurred in defending a lawsuit in order to prevail in a malicious prosecution action. [Citations omitted.] Even in jurisdictions, like California, which do not impose a special-injury requirement, the elements of the tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 872.)

10

added.)  If probable cause does *not* turn on the resolution of the factual dispute, the dispute need not go to a jury.

The court illustrated this principle in *Roberts v. McAfee, Inc.* (9th Cir. 2011) 660 F.3d 1156.  There, plaintiff Roberts allowed McAfee's vice president, Davis, to backdate some of his stock options.  When McAfee subsequently was implicated in a probe of backdating of stock options, Roberts voluntarily disclosed to members of the board of directors that his options had been backdated.  Roberts contended that during those conversations he disclosed the backdating, but acknowledged no problems with it; the directors said otherwise, contending that Roberts "had described 'agonizing' over the issue and admitted that what he had done was wrong." (*Id*. at p. 1160.)  McAfee terminated Roberts and, after an investigation, presented to government agencies its conclusion that Roberts had engaged in illegal activity.  (*Ibid*.)  A federal criminal prosecution ensued, at the conclusion of which Roberts was acquitted of some charges; others were dropped.  (*Id*. at pp. 1161-1162.)

After his acquittal, Roberts sued McAfee for malicious prosecution, among other torts.  (*Roberts v. McAfee, Inc.*, *supra*, 660 F.3d at p. 1162.)  The district court denied McAfee's anti-SLAPP motion to strike the malicious prosecution claim, citing " 'disputed issues of fact regarding information provided by McAfee to the government investigators.' "  (*Ibid*.)  The Ninth Circuit reversed.  It noted that although many facts were disputed, several key facts were not.  Because those facts were sufficient to permit a reasonable person to suspect a crime had been committed, as a matter of law Roberts could not establish the absence of probable cause.  The court explained:

"Assuming, as we must at this stage, that Roberts' sworn allegations are correct, McAfee falsified and withheld evidence to make his culpability seem clearer than it really was.  According to Roberts, McAfee or its agents said that he had confessed when he had not, and offered an incomplete picture of the [backdating] to exaggerate the degree of suspicion created by his conduct.  If Roberts is right, McAfee behaved inexcusably.  But, under California law, lying about the facts is not enough to destroy probable cause.  In *Sheldon Appel*, the California Supreme Court held that, so long as the

11

evidence known to the defendant could support an *objectively reasonable* suspicion—regardless of whether the defendant actually possessed such a suspicion—the defendant is not liable for malicious prosecution. *Sheldon Appel*, 765 P.2d at 506. By that same reasoning, a defendant who fabricates evidence still acts with probable cause if the defendant is aware of other evidence which would make it objectively reasonable to suspect the plaintiff's guilt. [Citations.]

"To be sure, McAfee would lack probable cause had it fabricated the entire predicate for its claim. [Citation.] But that is because, in such a case, the defendant would know of *no* facts that could provide reason to suspect the plaintiff of wrongdoing. [Citations.]

"Here, by contrast, even if McAfee misrepresented certain aspects of the [backdating] to make Roberts look worse, it was also aware of other facts that, on their own, provided objectively reasonable suspicion that Roberts had committed a crime. . . . While Roberts was eventually successful in beating back the criminal and civil enforcement actions against him, the ultimate failure of a lawsuit does not mean there was no probable cause to bring it." (*Roberts v. McAfee, Inc.*, *supra*, 660 F.3d at pp. 1164-1165.)

The court reached a different result in *Greene v. Bank of America* (2013) 216 Cal.App.4th 454, concluding that the trial court should not have resolved the probable cause issue as a matter of law because there was a dispute as to the entire factual predicate for defendants' report to law enforcement. There, a bank refused to cash a check tendered by plaintiff Greene. After a heated exchange between Greene and the branch manager, the manager called police and reported that Greene had threatened to blow up the bank. Greene was arrested and charged with making a criminal threat. He was acquitted after a jury trial. (*Id*. at p. 457.)

Following his acquittal, Greene sued the bank and the branch manager for malicious prosecution. Defendants filed an anti-SLAPP motion, contending that Greene could not establish a lack of probable cause as a matter of law. In support, defendants submitted declarations stating that Greene had become very agitated and shouted that "he

12

was not afraid of the police, that he was 'going to blow shit up,' and that he was an ex-convict, and that he was not afraid to blow the place up or break the doors." (*Id.* at p. 460.) Greene opposed the motion, conceding that he had "vent[ed]" about the bank's poor customer service, but said he never threatened any person or bank property with physical harm. (*Id.* at pp. 459-460.)

The Court of Appeal reversed the trial court's order granting the anti-SLAPP motion, concluding that the factual dispute surrounding Greene's alleged threats to blow up the bank precluded dismissal as a matter of law. It explained: " 'When, as here, the claim of malicious prosecution is based upon initiation of criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime.'. . . As we have seen, there was a conflict of the evidence on whether [the branch manager] honestly believed that plaintiff had threatened to blow up the Bank, or whether she deliberately lied. If she lied, she did not have probable cause." (*Id.* at p. 466.)

Considered together, *Roberts* and *Greene* stand for the proposition that, notwithstanding a dispute as to *some* facts, a defendant cannot be liable for malicious prosecution if other, undisputed facts support an objectively reasonable suspicion of criminal conduct. For purposes of granting a nonsuit, therefore, the focus is on the facts on which the parties agree—not those about which they disagree. If the undisputed facts demonstrate probable cause as a matter of law, a malicious prosecution claim necessarily fails. Only if the undisputed facts do *not* establish probable cause need the issue go to a jury for fact finding.

In the present case, as in *Roberts*, the facts indisputably known to the employees supported an objectively reasonable suspicion that McNeley and Cole had committed a crime. McNeley admitted that Cole took money from the cash register. There was no evidence that Cole had permission to take the money; to the contrary, McNeley agreed that one of the employees, Rodriguez-Ortega, put his hand over the register and said, "No, no, no, no, no," and the surveillance video of the incident shows a male employee putting his hand over the register and attempting to stop Cole from removing money from

it.[6] McNeley also agreed that he and Cole left the restaurant together, with the money, in his vehicle. On these facts, it was reasonable for the employees to suspect a crime had been committed and to so inform law enforcement.

Contrary to McNeley's contention, the present case is not analogous to *Greene*. As we have said, in *Greene* there were no undisputed facts from which bank employees could have concluded that Greene had committed a crime; *all* of the facts relevant to Greene's alleged threat to blow up the bank were disputed by Greene. Here, in contrast, although the parties dispute *some* facts—namely, whether McNeley threatened to harm employees with a gun, coffee pot, or knife—the undisputed facts provided an objectively reasonable basis on which the employees could believe McNeley and Cole guilty of a crime.

We note, finally, that the fact that the employees may have been uncertain of the precise crime McNeley and Cole may have committed is irrelevant to the determination of probable cause. For purposes of determining probable cause, "[t]he issue is whether it was objectively reasonable to suspect [plaintiff] had committed a crime. . . . Determination of the crime(s) to be charged is authority properly vested in a prosecuting agency, not a private [party]." (*Ecker v. Raging Waters Group, Inc.* (2001) 87 Cal.App.4th 1320, 1332 -1333.)

For all of these reasons, the trial court properly granted a nonsuit on McNeley's cause of action for malicious prosecution.

---

[6] We independently reviewed the surveillance video as part of our review of the record in this case.

14

**DISPOSITION**

The judgment is affirmed. Respondents are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.