**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES C. CONRAD,
            *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
            *Defendant-Appellee.*

No. 04-15402

D.C. No.
CV-00-05568-AWI

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted
April 4, 2006—San Francisco, California

Filed May 10, 2006

Before: Alfred T. Goodwin, Betty B. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Goodwin

**COUNSEL**

Brian C. Leighton, Clovis, California, for the plaintiff-appellant.

Catherine J. Cerna, Assistant United States Attorney, Sacramento, California, for the defendant-appellee.

**OPINION**

GOODWIN, Circuit Judge:

After he was unsuccessfully prosecuted on charges involving an illegal gambling operation, James C. Conrad, a twenty-six-year veteran police officer, brought a Federal Tort Claims Act ("FTCA") action against the federal government alleging false arrest, false imprisonment, abuse of process, and malicious prosecution. Conrad now appeals a summary judgment in favor of the government and a judgment on the merits in favor of the government. Finding no reversible error, we affirm.

Conrad's appeal assigns error to three rulings by the district court: (1) the summary judgment extinguishing his false imprisonment claim, (2) the findings of fact supporting the judgment that dismissed his malicious prosecution claim, and (3) the judgment dismissing his malicious prosecution claim.

## I. Factual and Procedural Background

During the course of a combined investigation by the Internal Revenue Service ("IRS") and the Fresno County Sheriff's Department, Conrad became a suspect in an alleged illegal gambling operation at a Fresno bar and grill known as the Elbow Room. During the ten months of the investigation, investigating officers came to believe that Conrad had

employed his knowledge of, and access to, state and local police information services to learn that an undercover investigator, who was also an officer in a neighboring city police department, had infiltrated the Elbow Room gambling operation. The investigators also came to believe that Conrad had "blown the cover" of their undercover man, rendering him useless, and the investigation compromised.

In due course, IRS Agent Linda Osuna, working with sheriff's deputies and an Assistant United States Attorney ("AUSA"), prepared a twenty-eight page affidavit and obtained from a federal magistrate judge search and arrest warrants. Conrad was among those arrested. The arrests were accomplished on a Wednesday afternoon. Federal magistrate judges at that time conducted arraignments in Fresno only on Mondays, Wednesdays, and Fridays, at 11:00 a.m. The arresting officers and the AUSA in charge of the investigation made no effort to arrange a special arraignment for Conrad. Accordingly, he was not arraigned until the following Friday at the usual 11:00 a.m. time. This 44.5 hour delay in taking Conrad before a magistrate judge became the central issue in Conrad's civil action, and in this appeal.

Agent Osuna testified before the grand jury that later indicted Conrad. The indictment charged: (1) conducting, and aiding and abetting, an illegal gambling business in violation of 18 U.S.C. § 1955; (2) conspiracy to operate an illegal gambling business in violation of 18 U.S.C. §§ 371, 1955; and (3) conspiracy to obstruct an agency investigation in violation of 18 U.S.C. § 1505.

Agent Osuna also testified at Conrad's criminal trial. After the government rested, Conrad and his co-defendants filed a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal with respect to counts one and two of the indictment. The district court granted the motion because the government had failed to introduce any evidence that, for thirty consecutive days, the gambling operation had five members.

*See* 18 U.S.C. § 1955(b)(1)(ii)-(iii). Following the acquittal on counts one and two, the AUSA dismissed count three. On March 5, 1998, Conrad was exonerated.

On July 15, 1999, Conrad filed a claim with the IRS seeking damages for Agent Osuna's handling of his criminal case. The IRS denied Conrad's claim on October 29, 1999. Having let the statute of limitations run on any *Bivens* claim he might have filed, Conrad commenced this action against the government under the FTCA. He named Agent Osuna as a defendant in her official capacity. He sought damages for: (1) false arrest; (2) false imprisonment; (3) abuse of process; and (4) malicious prosecution. He did not sue the AUSA, who was protected by prosecutorial immunity.

As a basis for his false arrest claim, Conrad alleged that Agent Osuna knowingly lied in the affidavit she presented to the magistrate judge who issued his arrest warrant. Conrad further alleged that the false arrest led to his false imprisonment and, alternatively, that he was falsely imprisoned because Agent Osuna failed to present him to a magistrate judge the same day he was arrested. Conrad's abuse of process claim was also premised on Agent Osuna's alleged lies. Conrad further alleged that Agent Osuna abused process by continuing to lie throughout her grand jury testimony and trial testimony. Conrad's malicious prosecution claim was premised on the same facts as those he alleged in support of his abuse of process claim.

## II.   The Civil Action

Before trial, the district court granted summary judgment in favor of the government with respect to the false arrest and abuse of process claims. The district court also granted that part of the government's motion for summary judgment relating to Conrad's first theory of false imprisonment: that the alleged lies leading to the false arrest also established false imprisonment. Initially, however, the district court did not

grant the government's summary judgment motion on Conrad's second theory of false imprisonment: that the delay in presenting Conrad to a magistrate judge for arraignment established false imprisonment. The latter question was resolved, in the government's favor, when the district court determined that the delay in taking Conrad to a magistrate judge was protected by the discretionary function exception to the FTCA. Accordingly, both theories of Conrad's false imprisonment claim were disposed of on summary judgment. Only Conrad's malicious prosecution claim remained to be tried.

The district court held a six-day bench trial. Seven witnesses, including Conrad and Agent Osuna, testified. Conrad's malicious prosecution claim turned on whether Agent Osuna lied in her affidavit, lied to the magistrate judge, and lied in her grand jury testimony. The district court made findings of fact that Agent Osuna did not knowingly: (1) lie in her affidavit; (2) lie to the magistrate judge; or (3) lie in her grand jury testimony. The district court did find that there were mistakes both in Agent Osuna's affidavit and in her testimony before the grand jury. However, the district court found that those mistakes were honest and that there was no proof that Agent Osuna intentionally misrepresented the truth because of malice towards Conrad. The district court then entered judgment for the government and against Conrad.

### III.   Issues on Appeal

As noted, Conrad challenges three rulings: (1) the order granting the government summary judgment with respect to his second theory of false imprisonment; (2) the findings of fact supporting the judgment in favor of the government on the malicious prosecution claim; and (3) the judgment in favor of the government on the malicious prosecution claim.

### a.   Claim of False Imprisonment

[1] The United States can be sued only to the extent that it has waived its sovereign immunity. *Reed v. United States*

*Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000). The FTCA grants such a waiver and authorizes suits against the

> United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

**[2]** There are, however, a number of exceptions to this broad waiver of sovereign immunity. *Berkovitz v. United States*, 486 U.S. 531, 535 (1988). The exception relevant to the present case is the discretionary function exception, which maintains the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." 28 U.S.C. § 2680(a). The discretionary function exception marks the boundary between Congress' willingness to impose tort liability on the United States and the desire to protect certain decision-making from judicial second-guessing. *See Berkovitz*, 486 U.S. at 536-37.

**[3]** In assessing whether the discretionary function exception applies to a particular case, we look to "the nature of the conduct, rather than the status of the actor," and assess the conduct in two ways. *Id.* at 536 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)). First, the question is whether the action taken by the government employee is a matter of judgment. *Id.* ("[C]onduct cannot be discretionary unless it involves an element of judgment or choice."). The discretionary function exception will not apply if there exists

a statute, regulation, or policy mandating particular conduct by a government employee and the statute, regulation, or policy does not allow for the exercise of discretion in fulfilling that mandate. *Id.* The exception will not apply in such a case because the government employee will have no choice but to follow the mandatory directive. *Id.*

**[4]** Second, once it has been determined that the challenged conduct involves an element of discretion, the question is whether the discretion is the type of decision-making that the discretionary function exception was designed to protect. *Id.* The purpose of the discretionary function exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536-37 (quoting *Varig Airlines*, 467 U.S. at 814). Therefore, the discretionary function exception will apply if the discretionary decision made is a permissible exercise of policy judgment. *Id.*

In this case, Conrad argues that the discretionary function exception was not applicable because Agent Osuna was proscribed from exercising any judgment or choice in determining when to present Conrad to a magistrate judge for arraignment. According to Conrad, Agent Osuna's choice was proscribed by the mandatory directives contained in Federal Rule of Criminal Procedure 5(a) ("Rule 5(a)") and Internal Revenue Manual ("IRM") Proposition 9.4.12.14.[1]

**[5]** Rule 5(a) requires that "[a] person making an arrest within the United States *must* take the defendant *without unnecessary delay* before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." FED. R. CRIM. P. 5(a) (emphasis added). Similarly, IRM 9.4.12.14 requires that "[a] special agent who makes an arrest, whether with or without an arrest warrant, *must* take the arrested person, *without unnecessary delay*,

---

[1]The parties cited this rule as IRM 9447.7.

before the nearest available US magistrate or other nearby officer empowered to commit persons charged with offenses against the laws of the United States." I.R.S. Internal Revenue Manual 9.4.12.14 (July 30, 2004) (emphasis added). The similarities between Rule 5(a) and IRM 9.4.12.14 are striking; IRM 9.4.12.14 even cites Rule 5. *Id.* It therefore follows that the import of the IRS rule, including its attendant policy considerations, is the same as that of Rule 5.

According to Conrad, the use of the word "must" in both rules indicates that Agent Osuna had no choice but to present Conrad to a magistrate judge on the day he was arrested because United States Magistrate Judges, United States District Judges, and Fresno County Superior Court Judges were located in close proximity to Conrad's place of detention and could have conducted the arraignment. Therefore, Conrad contended, because Agent Osuna was required to present Conrad to a magistrate judge without unnecessary delay she was not permitted to exercise any judgment in doing so, and the discretionary function exception would not shield her failure to present Conrad immediately.

**[6]** Conrad's argument, however, ignores the word "unnecessary" in Rule 5(a) and IRM 9.4.12.14. It is true that by using the word "must" the rules mandate performance as specified. *See Berkovitz*, 486 U.S. at 542-43. However, the mandated task in this case is to present an arrested person to the magistrate judge "without unnecessary delay." By using the qualifying term "unnecessary," the rule commits some definition of "necessary" to the judgment of the agent in the field. Because the rule does not define the term "unnecessary," an agent must determine, from all the circumstances existing at the time, how much delay is necessary before presenting a defendant to the magistrate judge. *See* FED. R. CRIM. P. 5(a) advisory committee's note ("What constitutes 'unnecessary delay', i.e. reasonable time within which the prisoner should be brought before a committing magistrate, must be

determined in the light of all the facts and circumstances of the case.").

**[7]** IRS agents, like other law enforcement officers, are required to avoid unnecessary delay in presenting an arrested person before an appropriate judicial officer. Execution of this duty requires exercise of judgment, the first step in the *Varig Airlines* analysis. *See Reed*, 231 F.3d at 504.

**[8]** The second step of the discretionary function analysis is also satisfied in this case because, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). Here, the notes of the advisory committee for Rule 5 illustrate the underlying policy decision: that only an agent in the field will be able to adequately determine how much delay is necessary before presenting a defendant to a magistrate judge. *See* FED. R. CRIM. P. 5(a) advisory committee's note.

**[9]** There are numerous factors involved in the decision of when to present a suspect to a magistrate judge and no statute, regulation, or policy could adequately predict them all *ex ante*. Thus, "[Rule 5(a) and IRM 9.4.12.14] allow room for implementing officials to make independent policy judgments" and, therefore, the discretionary function exception must "protect[ ] the acts taken by those officials in the exercise of this discretion." *See Berkovitz*, 486 U.S. at 546. Agent Osuna, acting in conjunction with the AUSA, presented Conrad to a magistrate judge in accordance with the practice of the Eastern District of California, which conducts arraignments principally at times designated by the magistrate judges. Her decision to do so balanced Conrad's rights under Rule 5(a) with such other considerations as the timing of Conrad's arrest (see below) and the fact that magistrate judges must perform a broad, varied, and substantial volume of

duties that require time themselves: monitoring discovery disputes in civil litigation, trials in delegated civil cases, hearings and fact finding in habeas corpus and other criminal matters, and initial appearances in criminal prosecutions. That Agent Osuna chose to present Conrad at a regularly scheduled time, instead of at a specially arranged one, does not necessitate the conclusion that she abdicated the exercise of judgment.

Nor does the record contain evidence that Agent Osuna deliberately delayed arresting Conrad in order to increase the amount of time he would spend in custody. *Compare United States v. Jernigan*, 582 F.2d 1211, 1214 (9th Cir. 1978) (refusing to dismiss an indictment even though "agent Horn deliberately delayed arresting Jernigan until a time when, as he well knew, Jernigan would not be able to go before a magistrate, have bail reset, and be released"). To the contrary, the time of Conrad's arrest was chosen to cause the least likelihood of destruction of evidence and the greatest likelihood of seizure of gambling monies. Ultimately, the facts of this case demonstrate that Agent Osuna exercised discretion by not demanding that other players in the investigation/prosecution team cooperate in seeking a special arraignment outside the Eastern District's schedule. We have been referred to no case holding that such a choice removes an agent's decision from the protection of the discretionary function exception. That said, we do not suggest that law enforcement agents making arrests may escape the dictates of Rule 5(a) by rigidly adhering to the magistrate judges' arraignment schedule, thereby abandoning any exercise of individualized judgment or discretion. There is a difference between a case such as this, in which an agent may validly claim that she exercised discretion (even if she has abused it, *see* 28 U.S.C. § 2680(a)), and a case in which the agent is not exercising discretion but rather exploiting the authority she wields in an effort to circumvent arraignment proceedings.

**[10]** Because Agent Osuna's decision, to the extent that she was the sole decision maker, involved the exercise of judg-

ment, and because Congress intended to shield this decision-making from judicial second-guessing, the discretionary function exception applies to Conrad's false imprisonment claim. There are no genuine issues of material fact in dispute on the matter. Accordingly, no subject matter jurisdiction exists to hear Conrad's false imprisonment claim and the district court did not err in granting summary judgment in favor of the United States. *See Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) ("If [the discretionary function exception] applies, sovereign immunity is not waived, and no subject matter jurisdiction exists.").

*b.   Claim of Malicious Prosecution*

In assessing the United States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort occurred. *Trenouth v. United States*, 764 F.2d 1305, 1307 (9th Cir. 1985). Here, Conrad's malicious prosecution claim is for actions and events occurring in California. Thus, California law applies.

[11] To prove a claim of malicious prosecution in California, the plaintiff must prove that the underlying prosecution: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989). In this case, our analysis of the district court's probable cause determination is dispositive of the entire claim.

"The question of probable cause is one of law, but if there is a dispute concerning the defendant's knowledge of facts on which [the initial prosecution was] based, the [trier of fact] must resolve that threshold question." *Sierra Club Found. v. Graham*, 85 Cal. Rptr. 2d 726, 737 (Cal. Ct. App. 1999). Here, a question of fact existed as to whether Agent Osuna knowingly lied in her affidavit and grand jury testimony.

Thus, the district court, as the trier of fact, had to resolve that question before making a legal conclusion as to probable cause.

To resolve the dispute, the district court held a trial and heard the testimony of a number of the parties involved in the criminal prosecution, including Conrad and Agent Osuna. After hearing Agent Osuna's testimony, which was not contradicted by extrinsic evidence, the district court credited her version of events and found that she did not knowingly lie in her affidavit or grand jury testimony. This was particularly true, according to the district court, because it would have been impossible for Agent Osuna to have lied in her affidavit and grand jury testimony unless three other investigators and the AUSA were complicit in the lie.

**[12]** We review the district court's finding on this point only for clear error and, therefore, must affirm unless we are firmly convinced an error has been made. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Id.* at 573-74. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding . . . can virtually never be clear error." *Id.* at 575.

To determine whether probable cause existed after finding the necessary facts, the district court had to "make an objective determination of the 'reasonableness' of [Agent Osuna's] conduct, i.e., to determine whether, on the basis of the facts known to [Agent Osuna], the institution of the prior action was legally tenable." *Sheldon Appel*, 765 P.2d at 506. "When . . . the claim of malicious prosecution is based upon the initiation of a criminal prosecution, the question of probable cause

is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." *Ecker v. Raging Waters Group, Inc.*, 105 Cal. Rptr. 2d 320, 326 (Cal. Ct. App. 2001).

In a federal criminal prosecution, a grand jury finds probable cause. *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th Cir. 1987). And, under California tort law, a grand jury indictment creates a presumption in favor of the malicious-prosecution defendant that probable cause existed for the underlying prosecution. *Williams v. Hartford Ins. Co.*, 195 Cal. Rptr. 448, 452 (Cal. Ct. App. 1983). The plaintiff can rebut the presumption, however, by demonstrating that the indictment was procured on the basis of false testimony. *Id.* "[I]f [the] defendant *knows* that the facts he or she is asserting are not true, then [the] defendant's knowledge of facts which would justify initiating suit is zero, and probable cause is nonexistent." *Sierra Club*, 85 Cal. Rptr. 2d at 737.

**[13]** In this case, Conrad's indictment was handed down by a grand jury, establishing a rebuttable presumption of probable cause. *See Williams*, 195 Cal. Rptr. at 452. In an attempt to rebut this presumption, Conrad alleged that his indictment was secured using Agent Osuna's false testimony. As noted above, however, the district court's finding with respect to Agent Osuna's truthfulness was not clearly erroneous and cannot be reversed. The district court's finding conclusively establishes that Conrad's grand jury indictment was proper. Because we conclude that the district court's findings were not clearly erroneous, we affirm the district court's judgment that Conrad failed to rebut the presumption of probable cause and that his malicious prosecution claim therefore must fail. *Sheldon Appel*, 765 P.2d at 504 ("If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated."). The district court did not err by granting judgment in favor of the United States.

## IV. Conclusion

The district court made no legal errors and its findings of fact are not clearly erroneous. Accordingly, the judgment is

**AFFIRMED**